UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
J&J SPORTS PRODUCTIONS, INC.,

                Plaintiff,

            -against-

HOT SHOTS, INC.,
d/b/a HOT SHOTS SPORTS BAR,
and VIJAYANAND RAMCHARAN,

                Defendants.
-----------------------------------------------------------X

REPORT &
RECOMMENDATION
10-CV-3333 (DLI)

GOLD, S., U.S.M.J.:

## Introduction

Plaintiff, J & J Sports Productions, Inc. ("J & J Sports"), brings this action alleging that defendants, Hot Shots Inc., d/b/a Hot Shots Sports Bar ("Hot Shots") and Vijayanand Ramcharan, individually and as owner of Hot Shots, unlawfully intercepted and misappropriated a closed circuit television exhibition of a boxing match held on July 26, 2008 between Miguel Cotto and Antonio Margarito (the "event") in violation of the Federal Communications Act of 1934 ("FCA"), codified as amended, 47 U.S.C. §§ 553 and 605. More specifically, plaintiff alleges that defendants intercepted and received the event without paying the required fees, or in the alternative that the defendants "assisted in the receipt of the interstate communication" and displayed it to patrons at Hot Shots. Compl. ¶¶ 15, 17, Docket Entry 1.[1] Upon plaintiff's application and in light of defendants' failure to appear in or otherwise defend this action, the Clerk of the Court entered the default of the defendants. Docket Entry 8. By Order dated October 7, 2010, the Honorable Dora L. Irizarry referred plaintiff's motion to me for a report and recommendation.

---

[1] Paragraph 15 erroneously refers to transmission of the event to patrons of "Casa Panini Pizzeria," but paragraph 17 correctly refers to the patrons of "Hot Shots Sports Bar."

Discussion

A.    Liability

Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *See Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Pub. Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *See Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks omitted). *See also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (recognizing the court's authority, even after default, to determine whether plaintiff has stated a cause of action).

Section 605(a) provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). In the Second Circuit, section 605(a), which by its express terms prohibits unauthorized interception of interstate wire communications, has been held applicable to thefts of cable communications, provided that the cable programming originated as a radio or satellite communication. *Cmty. Television Sys. Inc. v. Caruso*, 284 F.3d 430, 435 (2d Cir. 2002); *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (2d Cir. 1996). *Cf. TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 207 (3d Cir. 2001) (holding that § 605 applies only to theft of satellite broadcasts intercepted prior to distribution over a cable system).

In its complaint, plaintiff alleges that the cable transmissions at issue here derived from satellite communications, and that only establishments with whom it contracted were provided

decoding equipment and satellite coordinates necessary to receive and broadcast the event to their patrons. Compl. ¶¶ 13, 14. Plaintiff further alleges that Hot Shots did not pay the requisite fee, but rather may have used one of the following methods to intercept the satellite broadcast: use of a decryption device such as a 'black box' to decode the satellite signal, misrepresentation of a commercial establishment as a residence to obtain a lower price, use of an illegal cable drop or splice from an adjacent residence, or an illegal purchase of satellite authorization codes. Compl. ¶¶ 15-16; *see also* Affidavit of Joseph Gagliardi, president of J & J Sports ("Gagliardi Aff.") ¶ 9, Docket Entry 11-2. Thus, plaintiff's complaint adequately alleges a violation of section 605(a).[2]

Plaintiff's allegations of individual liability, however, are insufficient to hold Ramcharan liable for any violation.[3] Plaintiff alleges that Ramcharan is the owner of Hot Shots. Compl. ¶ 6. Thereafter in the complaint, plaintiff uses the term "defendants" to refer to Ramcharan and the corporation, without identifying any actions specifically taken by Ramcharan. Officers and directors of a corporation, however, are generally not liable for the tortious acts of the corporation "unless they participate in or have knowledge of such acts." *Garden City Boxing Club, Inc. v. Paquita's Cafe, Inc.*, 2007 WL 2783190, at *2 (S.D.N.Y. Sept. 26, 2007) (declining to find the individual owner liable). Here, the complaint fails to allege that Ramcharan directly participated in, authorized, or had knowledge of the violation. *See Iqbal v. Ashcroft*, 129 S. Ct. 1937, 1949 (2009) (holding that "a complaint must contain sufficient factual matter . . . to 'state a

---

[2] Plaintiff also alleges a violation of 47 U.S.C. § 553. Compl. ¶¶ 28-33. Because recovery under §§ 553 and 605 is impermissible, *see New Contenders, Inc. v. Diaz Seafood Corp.*, 1997 WL 538827, at *1 (S.D.N.Y. Sept. 2, 1997), and a court should award damages pursuant to § 605 because it provides for greater recovery than § 553, *Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1009 (2d Cir. 1993), I do not consider whether plaintiff's complaint sufficiently alleges a violation of § 553. *See also* Pl.'s Mem., Docket Entry 11 (seeking an award pursuant to § 605 only).

[3] I note that Hot Shots, is now an inactive corporation, dissolved as of April 27, 2011, according to the records of New York State, Department of State, Division of Corporations. *See* http://appext9.dos.state.ny.us/corp_public/corpsearch.entity_search_entry. A dissolved corporation, however, may be sued while it is winding down its affairs. *See* N.Y. BUS. CORP. LAW § 1006(a)(4).

claim to relief that is plausible on its face,'' which requires "the plaintiff [to] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). Accordingly, the allegations of the complaint fail to establish Ramcharan's liability, and I recommend that plaintiff's motion seeking a default judgment against Ramcharan be denied. *See Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.*, 10-CV-108, Report & Recommendation, Docket Entry 13, adopted 2011 WL 923515 (E.D.N.Y. Mar. 14, 2011) (citing cases for the proposition that "mere ownership" is insufficient to support a finding of individual liability); *J & J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009) (declining to find individual liability where the complaint simply alleged that the defendant was the owner of the bar and "made no allegation that [defendant] was present for the violation, that he authorized or controlled it, or that he reaped commercial profit from it"); *cf. J & J Sports Prods., Inc. v. Shafik*, 2011 WL 1240559, at *2 (E.D.N.Y. Feb. 11, 2011) (finding sufficient allegations of individual liability where complaint alleged that individual "supervised and controlled the operating procedures" of the corporation).

B.    Damages

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. *See Greyhound Exhibitgroup*, 973 F.2d at 158. Rather, claims for damages generally must be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. *Id*. A court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *See Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence

4

presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* FED. R. CIV. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40. Plaintiff seeks statutory and enhanced damages in the amount of $30,000, plus costs and interest. Plaintiff's Memorandum in Support of Request for Judgment by Default ("Pl's Mem.") 6, 13, 16, Docket Entry 11. Defendants have not submitted any opposition to plaintiff's motion. Accordingly, a hearing on the issue of damages is not warranted.

A claimant who has established liability under 47 U.S.C. § 605(a) may elect between actual damages plus defendant's profits, if any, or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i)(II). Where a party elects to recover statutory damages, it may recover an award from $1,000 to $10,000 for each violation of section 605(a). *Id.* § 605(e)(3)(C)(i). An additional $100,000 in enhanced damages is available where the violation was willful and was committed for commercial advantage or financial gain. *Id.* § 605(e)(3)(C)(ii). Plaintiff in this case seeks an award of statutory damages, including an enhanced damages award based on defendants' willfulness. Pl's Mem. 13-16; Compl. ¶ 27.

The amount of damages to be awarded pursuant to section 605 rests in the sound discretion of the court. 47 U.S.C. § 605(e)(3)(C)(i)(II) (providing for an award "as the court considers just"); *see also Time Warner Cable of New York City v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997). Courts have generally adopted one of two methods for awarding statutory damages. Some courts assess a per person charge based on the number of individuals in the establishment at the time of the broadcast. *See, e.g., J & J Sports Prods. v. Arhin*, 2009 WL 1044500, at *1, 6-7 (E.D.N.Y. Apr. 17, 2009); *Garden City Boxing Club, Inc. v. Taqueria La Mixteca, Inc.*, 2008 WL 4107130, at *2 (E.D.N.Y. Sept. 4, 2008). Other courts award plaintiff its lost revenue based on the licensing fee defendant would have paid to broadcast the event at the

establishment legally. *See, e.g., Kingvision Pay-Per-View Ltd. v. Zalazar*, 653 F. Supp. 2d 335, 340-41 (S.D.N.Y. 2009) (using the licensing fee as a base amount); *J & J Sports Prods., Inc. v. Benson,* 2007 WL 951872, at *5 (E.D.N.Y. Mar. 27, 2007). Plaintiff has submitted evidence that eight to thirteen individuals were at Hot Shots Sports Bar during the fifteen minutes the investigator was present for the illegal broadcast. Affidavit of Earl L. Covington ("Covington Aff."), Docket Entry 11-1. An award of $54.95 per patron (based on the maximum number of patrons observed) would result in a total award of $714.35, an amount less than the statutory minimum. Plaintiff, however, has also presented evidence that it would have charged defendants a licensing fee of $1,800 for the right to broadcast the event at Hot Shots. Gagliardi Aff. ¶ 8; *see also id.* Ex. 1. Because the licensing fee more accurately reflects the loss to the plaintiff than a per-person calculation in this case, I recommend that plaintiff J & J Sports be awarded statutory damages in the amount of $1,800 for Hot Shot's illegal broadcast of the event. *See, e.g., J & J Sports Prods., Inc. v. Sin Fronteras Rest.*, 2010 WL 1565441, at *7 (E.D.N.Y. Feb. 23, 2010).

Plaintiff also seeks an enhanced damages award pursuant to § 605(e)(3)(C)(ii), asserting that defendants' acts were willful and committed for financial gain. The Supreme Court has defined willfulness as "disregard for the governing statute and an indifference to its requirements." *Transworld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985) (*quoted in Cablevision v. Lokshin*, 980 F. Supp. 107, 114 (E.D.N.Y. 1997)). The broadcast of an event without authorization is a deliberate act, and thus establishes willfulness. *See Taco Rapido Rest.*, 988 F. Supp. at 111 ("In order for [defendant] to receive the closed-circuit broadcast, it had to have engaged in some deliberate act. . . ."); *Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"). *See also* Gagliardi Aff. ¶ 9.

Courts use a variety of factors in determining whether a defendant's willful conduct justifies enhanced damages, including whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising for the event; and (v) defendant's collection of a cover charge or premiums for food and drinks. *J & J Sports Prods., Inc. v. Alvarez*, 2009 WL 3096074, at *5 (S.D.N.Y. Sept. 25, 2009); *Kingvision v. El Rey Del Bistec Y Caridad, Inc.*, 2001 WL 1586667, at *2 (S.D.N.Y. Dec. 12, 2001).

The factors supporting enhanced damages are not particularly compelling in this case. Defendants have apparently violated the statute on one other occasion.[4] Additionally, plaintiff has not submitted any evidence demonstrating that defendants obtained a substantial monetary benefit by displaying the event to its patrons. As noted above, the licensing fee representing plaintiff's actual damages is $1,800. Gagliardi Aff. ¶ 8. Finally, plaintiff acknowledges that those who pirate boxing matches rarely advertise except by word of mouth and typically do not collect cover charges or charge premiums for food and drinks. *Id*. ¶¶ 15-17. Nonetheless, plaintiff contends that piracy of the boxing matches has caused the "loss of several millions of dollars of revenue," resulting in increased costs to customers. *Id*. ¶¶ 11, 12.

Taking all of these factors into account, I recommend that plaintiff be awarded an enhancement of three times the damages award, or $5,400, for willfulness, for a total statutory award of $7,200. *See J & J Sports Prods., Inc. v. Forbes*, 2008 WL 5263732, at *6 (E.D.N.Y. Dec. 17, 2008) (trebling for willfulness); *Benson*, 2007 WL 951872, at *5 (same); *J & J Sports*

---

[4] Plaintiff submitted no evidence of prior violations, but this Court issued an opinion, *J & J Prods. v. Hot Shots, Inc.*, 2010 WL 3522809 (E.D.N.Y. Feb. 23, 2010), recommending a default judgment be entered in the amount of $11,340 against the same defendants for a violation of § 605(a) in 2007. The judgment in that case, however, was entered after the violation in this case took place. Defendants were not even served in the earlier case before this second violation occurred. *See J & J Prods.v. Hot Shots, Inc.*, 09-CV-1884, Docket Entries 2, 3. Accordingly, I do not find defendants' repeat violation sufficiently compelling to warrant a significant enhancement.

*Prods., Inc. v. Drake*, 2006 WL 2927163, at *5 (E.D.N.Y. Oct. 11, 2006) (awarding a factor of three times for willfulness where thirty people were present for the illegal broadcast).

Plaintiff also seeks an award of prejudgment interest. Section 605 of the FCA does not provide for interest. The majority of courts to have considered the issue have denied an award of prejudgment interest on the grounds that statutory damages under the FCA are "analogous to punitive damages in that they are designed to deter others from similar infringing activity."[5] *Garden City Boxing Club, Inc. v. Guerra*, 2007 WL 539156, at *5 (E.D.N.Y. Feb. 16, 2007). *See also J & J Sports Prods., Inc. v. Palm Tree Sports Bar, Inc.*, 2011 WL 1153584, at *5 (E.D.N.Y. Mar. 8, 2011) (declining to award prejudgment interest in light of the enhanced damages award for willfulness); *Garden City Boxing Club, Inc. v. Hernandez*, 2008 WL 4974583, at *7 (S.D.N.Y. Nov. 24, 2008); *Kingvision Pay-Per-View Ltd. v. Autar*, 426 F. Supp. 2d 59, 65 (E.D.N.Y. 2006); *Kingvision Pay-Per-View Ltd. v. Olivares*, 2004 WL 744226, at *5 (S.D.N.Y. Apr. 5, 2004). I therefore respectfully recommend that plaintiff's application for prejudgment interest be denied.[6]

Finally, plaintiff seeks an award of its costs in the amount of $470, including $350 for the filing fee and $120 for service.[7] Pl's Mem. 17. Plaintiff is entitled to recover the costs associated with filing and service. *Autar*, 426 F. Supp. 2d at 66. Plaintiff has failed to submit any proof of its costs. The docket sheet, however, reflects plaintiff's payment of a filing fee of $350, Docket Entry dated July 21, 2010, and I therefore respectfully recommend that plaintiff be

---

[5] The few courts that have awarded prejudgment interest have done so with little explanation. *See, e.g., Garden City Boxing Club, Inc. v. Morales*, 2005 WL 2476264, at *10 (E.D.N.Y. Oct. 7, 2005); *Kingvision Pay-Per-View Ltd. v. Ruiz*, 2005 WL 589403, at *3 (S.D.N.Y. Mar. 9, 2005).

[6] Plaintiff did not seek prejudgment interest in its complaint, but subsequently did so in its motion for default judgment. *Compare* Compl. ¶ 27, *with* Pl's Mem. 17. Because recovery on a default judgment is limited to the relief sought in the complaint, I recommend denial of any prejudgment interest for this reason as well. *See* FED. R. CIV. P. 54(c); *Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007) (declining to award prejudgment interest where plaintiff failed to include a "distinct claim" for such damages in the demand clause).

[7] Plaintiff does not seek an award of attorney's fees. *See* Pl's Mem. 17.

awarded $350 in costs.

## Conclusion

For the foregoing reasons, I respectfully recommend that judgment be entered against Hot Shots in the total amount of $7,550, comprised of $7,200 in statutory damages and $350 in costs. I further recommend that plaintiff's application for prejudgment interest be denied. Finally, I recommend that the prong of plaintiff's motion seeking a default judgment against defendant Vijayanand Ramcharan be denied.

Any objections to the recommendations made in this Report must be filed within fourteen days of this Report and Recommendation and, in any event, on or before June 17, 2011. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

Plaintiff is hereby directed to serve copies of this Report and Recommendation upon defendants at their last known addresses, and to file proof of service with the Court.

Dated:	Brooklyn, New York
	May 31, 2011

/s/
**STEVEN M. GOLD**
**United States Magistrate Judge**

*U:\ES 2011\J&J v. Hot Shots - final 053111.docx*